**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

MARY ELLEN CLOSE,

    Plaintiff,

    v.                                            Case No. 11- C -159

COMMUNITY LIBRARY,
KENNETH MANGOLD,
MICHAEL MAHONEY,
SHARON BOWER,
PATRICK O'CONNELL,
IRENE SWAN,
LINDA SMITH, and
MARLENE GOODSON,

    Defendants.

## DECISION AND ORDER

The plaintiff, Mary Ellen Close, filed this action on February 11, 2011, against the defendants, Community Library, Kenneth Mangold, Michael Mahoney, Sharon Bower, Patrick O'Connell, Irene Swan, Linda Smith and Marlene Goodson in their individual and official capacities. On May 13, 2011, the plaintiff filed an amended complaint. She brings this action under (i) the Age Discrimination in Employment Act of 1967 (ADEA) 29 U.S.C. § 621 et. seq.; (ii) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. (Title VII), Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and 42 U.S.C. § 1983 to correct unlawful employment practices on the basis of sex discrimination and retaliation; and (iii) 42 U.S.C. § 1983 for violation of her First Amendment right to freedom of speech. The plaintiff also asserts that defendants Mangold and Mahoney violated 42 U.S.C. § 1985 by conspiring to deprive her of equal protection of the laws.

The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(b)(1) (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

On June 16, 2011, defendant Kenneth Mangold filed a motion to dismiss all claims against him. (Docket #16). This motion has been fully briefed and will be addressed herein.

## **MOTION TO DISMISS**

A complaint "need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief' that is also sufficient to provide the defendant with 'fair notice' of the claim and its basis." Windy City Metal Fabricators & Supply v. CIT Technology Financing Services, Inc., 536 F.3d 663, 667 (7th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 [2007]; Fed. R. Civ. P. 8[a][2]). However, to demonstrate that he is entitled to relief, the plaintiff must show through his allegations that "it is plausible, rather than merely speculative, that he is entitled to relief." Tamayo, 526 F.3d at 1083 (quotation omitted); see also, Bell Atlantic, 550 U.S. at 555.

When deciding a motion to dismiss, a court must construe the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences" in favor of the plaintiff. Tamayo, 526 F.3d at 1081 (citing Twombly, 550 U.S. 555). The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

At the outset, the court notes that defendant Mangold's motion is predicated on the affirmative defenses of claim preclusion[1] and issue preclusion, but he did not cite to a

---

[1]Claim preclusion historically has been referred to as res judicata and issue preclusion also is known as collateral estoppel. Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co., 649 F.3d

particular rule of civil procedure. Defendant Mangold did not raise these defenses in his answer. "As a general matter . . . failure to plead an affirmative defense results in a waiver of that defense." Devalk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 334 (7th Cir. 1987). Although affirmative defenses are usually raised in the answer and decided in a motion for summary judgment, "it is within the trial court's discretion to rule on the affirmative defense of res judicata by way of a Fed. R. Civ. P. 12(b)(6) motion." Johnson v. Panizzo, 664 F. Supp. 336, 338 n.3 (N.D. Ill. 1987) (citations omitted). Similarly, although collateral estoppel is an affirmative defense that should be included in the answer, "a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result." Best v. City of Portland, 554 F.3d 698, 700 (7th Cir. 2009).

In this case, there is no indication that the plaintiff was harmed by the defendant's delay in raising the grounds of claim preclusion and issue preclusion in his motion to dismiss. Therefore, in the exercise of its discretion, the court will decide the issues raised in the motion to dismiss.

## **FACTUAL ALLEGATIONS IN THE COMPLAINT**

Mary Ellen Close, age 63, was hired in 1980 by the Community Library to serve as its director. The plaintiff holds a Bachelor of Arts degree in mathematics from Oberlin College, a Masters of Science degree in engineering from the California Institute of Technology and a Masters degree in Library Science from the University of Wisconsin–Milwaukee. The plaintiff served as director and worked closely with the Board of Directors of the Community Library (Board) without incident from 1980 to 2007.

---

539, 547 (7th Cir. 2011).

In 2008, the composition of the Board of Directors at the Library changed when new trustees, including defendants Mahoney and Mangold, were appointed. According to the complaint, this was the start of "Community Library's descent into a hostile and misogynistic work environment." (Amended Complaint at 5). "Defendant Mangold made it his personal mission to verbally attack the plaintiff and then board president Shirley Boening every opportunity he had in an effort to remove these women from positions of power." Id. at 6.

Defendant Mahoney often wore a hat that bore the phrase "Good Ol' Boys" to Board meetings, and the plaintiff expressed her displeasure with the hat to defendant Mangold and the Board. A Kenosha County citizen also sent an e-mail to the Board expressing concern about the prejudicial nature of the hat. Despite these concerns, defendant Mahoney continued to wear the hat and the Board took no action to stop him. At a meeting in September 2008, defendant Mahoney told a female employee of the Library that she should "save a horse and ride a cowboy," a comment that led the plaintiff to once again complain to the Board. Id. at 6-7. The Board did not take action or reprimand Defendant Mahoney for the comment.

In February and March 2009, defendant Mahoney came into the library and stared at female employees and/or patrons, which upset the plaintiff and other library staff members. Numerous written complaints were filed. The plaintiff proceeded to draft a letter to the Twin Lakes Village Administrator, who had appointed defendant Mahoney to the Board, notifying him of the female employees' concerns. The Board did not take any action as a result of the letter.

Shortly after defendant Mangold's appointment to the Board, he began making "verbal attacks and baseless allegations" against the plaintiff. Id. at 7. On November 3, 2008, defendant Mangold sent an e-mail to other Board members and third parties accusing the plaintiff of improprieties relating to her job. Shirley Boening, then Board President, disputed

- 4 -

defendant Mangold's allegations in an e-mail. The plaintiff also addressed these allegations against her in a November 10, 2008, letter. Defendant Mangold continued to harass the plaintiff and to make allegations against her via e-mails, at Board meetings and in newspaper articles. At a March 23, 2009, Board meeting, defendant Mangold stated that the plaintiff was doing a fine job, but he continued to publicly call for her resignation. The plaintiff repeatedly complained to various Board trustees about defendant Mangold's harassing conduct, but the Board did not take action or reprimand him.

In a conversation with Rose Nolan, a former Board member and Community Library employee, defendant Mangold referred to the plaintiff as a "bitty," "fat" and a "thing," and stated that he wanted to "get younger people with clean, fresh thoughts" hired at the Library. Id. at 9. In 2008 and 2009, defendant Mangold and other Board members often asked the plaintiff when she intended to retire. The plaintiff maintains that the Board lacked effective policies and procedures to prevent and correct harassing behavior.

After a Board meeting on about August 24, 2009, defendant Mangold informed the plaintiff that she was not allowed to speak at an upcoming special meeting of the municipalities that was called to discuss the Community Library. At the meeting, which was open to the public, the plaintiff asked questions relating to a change in state statute regarding municipal representation of the Community Library. After the meeting, the plaintiff was publicly reprimanded by defendant Mangold for not adhering to his demand for silence, and he requested that the plaintiff be terminated.

At a Board meeting on September 28, 2009, the plaintiff was demoted to the position of desk clerk and was not provided a reason for her demotion. Defendants Mangold, Mahoney, Bower, O'Connell, Swan, and Smith voted to demote the plaintiff. According to the Board president, at the time the plaintiff was demoted, there were no written reprimands in her

file. At this same meeting, two board members, Dale Baughman and Lois Sokolski, quit the Board. The Board named LeeAnn Briese, age 39, as interim director of the Community Library. The plaintiff maintains that her demotion was retaliatory.

On January 20, 2010, two Board members, defendants Goodson and Mangold, personally informed the plaintiff that her employment with the Community Library was terminated. Mrs. Boening stated that the Board discussed that the plaintiff should be terminated because she complained of discrimination and sexual harassment. The Board did not follow proper protocol as set forth in the Bylaws and Policy Manual, when it terminated the plaintiff unilaterally, as opposed to acting upon recommendation of the Director. Thereafter, Ms. Briese took over permanently as director of the Community Library.

## **ANALYSIS**

In moving to dismiss the complaint, defendant Mangold asserts that the plaintiff's claims are barred by claim preclusion and issue preclusion. Defendant Mangold attached to his motion the complaint from a current Kenosha County action filed by the plaintiff and an Initial Determination decision from the Department of Workforce Development. This court may take judicial notice of these documents even though they are outside the pleadings because they are matters of public record. See General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080-81 (7th Cir. 1997) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1357 at 299 [2nd ed/ 1990]).

Defendant Mangold contends that the plaintiff's assertions with regard to his actions are barred by claim preclusion because the claims were, or could have been, raised in a prior action. Specifically, defendant Mangold maintains that his rights in the Kenosha County action may be "compromised based on the doctrine of claim preclusion" because he may be bound by any federal court rulings in the state court case. (Defendant Kenneth Mangold's Motion to

Dismiss [Defendant Mangold's motion] at 5). He claims that he "may be faced with issues of claim or issue preclusion in the state court case if the federal case is allowed to proceed against him." Id. at 7. Defendant Mangold requests that the court dismiss him from this federal lawsuit because "all of those claims can be adjudicated in the state court matter." Id. at 5. Finally, he notes that absent a requirement to do so, he should not have to "defend himself contemporaneously in both the Kenosha County lawsuit and the federal court lawsuit." Id. at 7.

In response, the plaintiff asserts that defendant Mangold waived his right to bring his motion to dismiss based on claim preclusion and issue preclusion because he failed to raise either of these affirmative defenses in his answer or amended answer. Rule 8(c) of the Federal Rules of Civil Procedure requires a defendant to plead any affirmative defenses in the answer to the complaint. However, the court has determined, in the exercise of its discretion, that it will address the affirmative defenses in the pending motion.

In opposing defendant Mangold's motion, the plaintiff also maintains that even if defendant Mangold is not deemed to have waived issue preclusion or claim preclusion as affirmative defenses, neither would apply in this case. The plaintiff acknowledges that defendant Mangold has met the first element of claim preclusion, an identity between the parties in the prior or present suits. However, she asserts that claim preclusion is not applicable because (1) a final judgment has not been rendered in the state case against defendant Mangold, and (2) the state case for libel and slander does not share an identity with the federal claims against the defendant. The plaintiff further contends that issue preclusion is not applicable because the issues sought to be precluded, libel and slander, have not been litigated previously and no final judgment has been entered.

The doctrine of res judicata, also referred to as claim preclusion, bars parties or their privies from relitigating a final judgment on the merits where the issues were, or could have been, raised in the first action. Hawxhurst v. Pettibone Corp., 40 F.3d 175, 180 (7th Cir.1994) (citing Federated Department Stores, Inc. v. Moitie, 453 U.S. 394, 398 [1981]). It "operates to prevent the litigation of any claim or ground of recovery that was available to a party in a prior action," whether or not the prior judgment actually determined that claim or ground. Allahar v. Zahora, 59 F.3d 693, 696 (7th Cir. 1995).

In order for res judicata to apply there must be: (1) a final judgment on the merits in the prior action; (2) identity of the cause of action in both the prior and subsequent suits; and (3) identity of the parties or their privies in these suits. Hawxhurst, 40 F.3d at 180. Identity of the causes of action in the two suits is determined by what is referred to as the "same transaction" test:

> [A] cause of action consists of a single core of operative facts giving rise to a remedy. . . .Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost. A plaintiff may not avoid an earlier judgment on the merits by merely concocting a new legal theory.

Highway J Citizens Group v. United States DOT, 456 F.3d 734, 743 (7th Cir. 2006) (quoting Doe v. Allied-Signal, Inc., 985 F.2d 908, 913 [7th Cir. 1993]). Therefore, if the same set of facts is essential to both claims, then there is identity between the two causes of action asserted and res judicata bars the latter from being litigated. Because res judicata is an affirmative defense, a defendant has the burden of showing that the issue was already litigated and resolved elsewhere. See United States v. Fidelity and Deposit Co., 986 F.2d 1110, 1116 (7th Cir. 1993).

Collateral estoppel, or issue preclusion "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting

judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979) (citing Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Foundation, 402 U.S. 313, 328-29 [1971]). Res judicata bars relitigation of claims and issues which were, or could have been, raised in a prior suit, while collateral estoppel "precludes the relitigation of a matter or fact or law that was previously litigated and decided." Alexander v. Chicago Park District, 773 F.2d 850, 853 n.1 (7th Cir. 1985).

> The party wishing to invoke collateral estoppel must establish the following factors:
>
> (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must be fully represented in the prior action.

Freeman United Coal Min. Co. v. OWCP, 20 F.3d 289, 293-94 (7th Cir. 1994). "Thus, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation,'" La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V., 914 F.2d 900, 906 (7th Cir. 1990) (quoting Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 153 L.Ed. 2d 210 [1979]). Collateral estoppel "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" Parklane, 439 U.S. at 329-30 (quoting Bernhard v. Bank of America Nat. Trust & Savings Assn., 19 Cal. 2d 807, 813, 122 P.2d 895 [1942]). The party asserting issue preclusion carries the burden to establish that it should be applied. La Preferida, 914 F.2d at 906.

On March 26, 2010, the plaintiff filed a complaint, Case Number 10-CV-700, in Kenosha County Circuit Court against Kenneth Mangold. In the complaint, the plaintiff alleges the following: (1) that the defendant made slanderous statements against her at a February 4, 2009, Community Library board meeting and at a September 2009 meeting of the

municipalities, (2) that the defendant delivered an e-mail on November 3, 2008, to various public officials and other board members that contained libelous comments about her, (3) that the defendant made libelous statements to the Kenosha News for the purposes of publishing such statements to humiliate her, and (4) that, as a result of the defendant's slanderous and libelous statements, the her reputation and standing in the community has been impaired, she has been personally humiliated, has suffered mental anguish, and has been demoted from her position and lost her job. (Defendant Mangold's Motion, Exh. A at 2-5).

The state case is scheduled for a final pretrial conference on March 30, 2012. The trial is scheduled to commence on April 16, 2012, and continue through April 19, 2012.

On March 29, 2010, the plaintiff filed a complaint with the Equal Rights Division (ERD) of the Wisconsin Department of Workforce Development alleging that Community Library violated the Wisconsin Fair Employment Law. (Defendant Mangold's Motion, Exh. B at 2). On September 15, 2010, the ERD made a determination of no probable cause, stating that "the Respondent provided legitimate nondiscriminatory reasons to demote and terminate the Complainant." Id., Exh. B at 4. The complaint was dismissed.

In this case, claim preclusion is not appropriate because the third factor is not met – there has been no final judgment on the merits in the plaintiff's state action pending in Kenosha County Circuit Court. The Restatement (Second) of Judgments states:

> [W]hen res judicata is in question a judgment will ordinarily be considered final in respect to a claim ... if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement that may be consequent upon the particular kind of adjudication. Finality will be lacking if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination, or if the court has decided that the plaintiff should have relief against the defendant of the claim but the amount of the damages, or the form or scope of other relief, remains to be determined.

See Special Souvenirs, Inc. v. Town of Wayne, 56 F. Supp. 2d 1062, 1080 (E.D. Wis. 1999) (quoting Restatement (Second) of Judgments § 13 cmt. b [1982]).  The most recent activity on record in the state action, case 10-CV-700, was the taking of depositions.  There has been no judgment of fact or law, no decision on the amount or the scope relief, nor any other hallmark of finality of judgment.  It is clear that there has been no completion of "all the steps in the adjudication of the claim by the court."  Id.  Therefore, there is no final judgment upon which this current action can be precluded.

Additionally, the decision by the Equal Rights Division, which included a determination of no probable cause, is not a final judgment on the merits.  The Court of Appeals for the Seventh Circuit "has drawn the line at claim preclusion for unreviewed state agency findings," noting that the Supreme Court concluded in University of Tennessee v. Elliott, that '"Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims.'"  Staats v. County of Sawyer, 220 F.3d 511, 514 (7th Cir. 2000) (quoting University of Tennessee v. Elliott, 478 U.S. 788, 796 [1986]).  The court went on to state that in cases where "state law creates a right and gives a state agency exclusive original jurisdiction over claims, pursuit of a claim with the agency does not preclude the subsequent pursuit of related claims based on federal or state rights that could not have been asserted before the agency."  Staats, 220 F.3d at 516 (quoting Waid v. Merrill Area Public Schools, 91 F.3d 857 [7th Cir. 1996]).

In this case, the Equal Rights Division has limited jurisdiction and "can hear claims brought under WFEA (Wisconsin Fair Employment Act), but not the federal anti-discrimination statutes."  Id. at 516. Therefore, the plaintiff could not have raised her federal anti-discrimination claims before the ERD.

- 11 -

The other factors necessary for claim preclusion, identity of the parties and identity of the cause of action in the current and prior suit, need not be addressed because the lack of a final judgment makes claim preclusion an inappropriate defense. Therefore, the plaintiff's claims in this action are not precluded.

Additionally, issue preclusion is not applicable in this case. The purpose of issue preclusion is to prevent the relitigation of identical issues between the same parties. Here, the first element of issue preclusion, requiring identical issues in both actions, has not been met. The issues being raised in the state case are libel and slander while the issues being raised in federal court are employment discrimination and sexual harassment. Furthermore, the requirement that the issue must have been actually litigated is not satisfied. No issues have been fully litigated in a prior action, nor have they been determined by a prior court's decision because the Kenosha County case is still pending.

In sum, for the reasons stated herein, defendant Mangold's motion to dismiss the plaintiff's claims against him on grounds of issue preclusion and claim preclusion will be denied.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the defendant Mangold's motion to dismiss this action against him be and hereby is **denied.** (Docket # 17).

Dated at Milwaukee, Wisconsin this 21st day of November, 2011.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge